IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ACS Technologies Group, Inc., | ) | Case No.: 4:25-cv-12944-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Robert W. Person, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Before the Court is Plaintiff ACS Technologies Group, Inc.'s ("ACS") Motion to Dismiss Defendant Robert W. Person's ("Person") counterclaims under Federal Rule of Civil Procedure 12(b)(6). (DE 6.) Person filed a response in opposition (DE 8), and ACS filed a reply (DE 12). For the reasons set forth below, the Motion is granted.

## I.     BACKGROUND

### A.     Factual Background[1]

According to ACS's Complaint, ACS provides software and related services to churches and faith-based organizations and employed Person during two periods before terminating him in January 2025. (DE 1-1 ¶¶ 11, 13–14, 17, 28.) ACS alleges— but Person disputes—that he developed or worked with a competing venture and misused confidential information. (DE 1-1 ¶¶ 18, 22.) Those allegations summarize

---

[1]     Because the Motion challenges Person's counterclaims, the Court accepts Person's well-pleaded factual allegations—not ACS's competing allegations—as true for present purposes. The Court may refer to ACS's Complaint for procedural context, but it may not resolve disputed facts in ACS's favor.

the nature of ACS's claims only; the Court does not accept them as true in deciding the Motion.

Person alleges a different account. He alleges that, between 2020 and June 2024, he repeatedly disclosed an independent venture to ACS officers and employees, sought approval before investing substantial funds, and was encouraged to proceed because ACS represented that the venture did not create a conflict and might become a partnership opportunity. (DE 4 at 16–17, Countercl. ¶¶ 1–3.) He also alleges that ACS recruited him for an undefined role in an "Emerging Ventures Department," which he declined on June 17, 2024. (*Id*. at 17, Countercl. ¶¶ 4–6.) According to Person, ACS changed its position in October 2024, characterized the venture as competitive, eliminated his existing role, placed him in a demoted position, and directed him to abandon the venture within two months or face termination. (*Id*. at 17–18, Countercl. ¶¶ 7–9.) ACS terminated him when he did not divest from the venture. (*Id*. at 18, Countercl. ¶ 10.)

Person also alleges that, after he filed a separate action against ACS in Florida on March 18, 2025, ACS filed this action in retaliation, communicated accusations of theft, disloyalty, and misappropriation to third parties, and interfered with prospective business opportunities. (*Id*., Countercl. ¶¶ 11–15.) Based on those allegations, Person asserts seven substantive counterclaims, numbered in the pleading as Counts I through V, VII, and VIII: (I) wrongful termination/breach of employment agreement; (II) breach of the implied covenant of good faith and fair dealing; (III) defamation; (IV) tortious interference with prospective business

relations; (V) abuse of process; (VII) intentional infliction of emotional distress; and (VIII) promissory estoppel. (*Id.* at 18–22, Countercl. ¶¶ 16–54.)

## B.     Procedural Background

This action was originally filed in the Florence County Court of Common Pleas on September 15, 2025. (DE 1-1.) On October 10, 2025, Person removed the action, asserting diversity jurisdiction under 28 U.S.C. § 1332. (DE 1.) On October 17, 2025, Person filed an Answer and Counterclaims. (DE 4.) ACS moved to dismiss the counterclaims on November 7, 2025, under Federal Rule of Civil Procedure 12(b)(6). (DE 6). Person responded on November 21, 2025 (DE 8), and ACS filed a reply (DE 12). The motion is fully briefed and ripe for review.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the challenged pleading. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need

3

[to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

The court may also consider documents attached to the complaint, as well as documents attached to the motion to dismiss, so long as they are authentic and integral to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). A document is "integral to the complaint" when "the complaint relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## III.   DISCUSSION

### A.   Count I — Wrongful Termination/Breach of Employment Agreement

Although Count I is styled as "wrongful termination/breach of employment agreement," the theory pleaded is contractual: Person alleges ACS violated agreements and policies governing termination and progressive discipline. ACS argues that Person has not alleged an enforceable agreement or mandatory policy limiting ACS's right to terminate his employment. (DE 6-1 at 8–9.) South Carolina

4

presumes employment to be at will. An at-will employment contract permits either party to end the relationship at any time, for any reason or no reason, unless an enforceable agreement or recognized exception limits that right. *Hall v. UBS Financial Services Inc.*, 866 S.E.2d 337, 340–42 (S.C. 2021); *Prescott v. Farmers Telephone Cooperative, Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). An employee handbook may alter at-will status when it contains definite, mandatory promises of specific treatment in specific situations. General policy statements and discretionary procedures do not suffice. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698–99 (S.C. 2005).

Person alleges only that he was employed under "valid agreements and policies," that ACS terminated him without cause, and that ACS failed to use progressive discipline. He identifies no specific contractual term in the counterclaims. Count I therefore fails to state a plausible breach-of-contract claim. Because Person may be able to identify a separate agreement or a mandatory policy not adequately pleaded, dismissal is without prejudice and with limited leave to amend.

**B.    Count II — Implied Covenant of Good Faith and Fair Dealing**

ACS moves to dismiss Person's counterclaim for breach of the implied covenant of good faith and fair dealing because the underlying relationship is at-will and no facts have been shown to alter the employment at-will presumption. (DE 6-1 at 9–10.) Person's counterclaim alleges that ACS told him it was supporting his venture, causing him to invest significant sums of money in it, and that ACS later terminated

5

him for his continued pursuit of this venture, despite its earlier acquiescence. (DE 4 at 16–17, Countercl. ¶¶ 2–5.) *Hall* controls this claim.

The Supreme Court of South Carolina in *Hall* held that at-will employment is contractual and therefore includes the implied covenant of good faith and fair dealing. 866 S.E.2d at 342–43. But the court also held that the right to terminate an at-will employee for a good reason, no reason, or a bad reason is an integral term of the contract. *Id.* at 343. The implied covenant cannot prohibit a party from doing what the contract expressly permits, and termination of an at-will employee cannot form the basis of a claim that the employer breached the covenant. *Id.* The court further clarified that breach of the implied covenant is not a cause of action separate from breach of contract. *Id.*

Person alleges that ACS encouraged his venture, induced him to invest, reversed course, and terminated him. Those allegations may describe unfair conduct, but Count II identifies no contractual provision governing ACS's approval of outside ventures, requiring ACS to invest in or partner with the venture, or otherwise limiting ACS's at-will termination right. As pleaded, the claim rests on the termination itself and on alleged bad motive. *Hall* forecloses that theory.

Count II is therefore dismissed with prejudice as a separate cause of action. This dismissal does not prevent Person from invoking the implied covenant as part of a properly pleaded breach-of-contract claim based on an enforceable term other than the at-will duration of employment.

## C.    Count III —Defamation

ACS seeks the dismissal of Person's counterclaim for defamation because he has not pleaded sufficient facts to state a plausible claim for relief. (DE 6-1 at 14–16.) ACS alleges that Person has not identified the content of the alleged defamatory statements, the dates of publication, and the identities of the third parties who supposedly received the publications. (*Id.*)

Under South Carolina law, defamation requires (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault by the publisher; and (4) actionability irrespective of special harm or special harm caused by the publication. *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001). Rule 8 does not impose a heightened pleading standard for defamation, but the pleading must provide enough factual content to make publication of an actionable statement plausible and to give fair notice of the claim.

Person alleges that, after March 18, 2025, ACS told "industry members, customers and prospective employers" that he engaged in theft, disloyalty, and misappropriation. (DE 4 at 19–20, Countercl. ¶¶ 27–34.) That allegation supplies a general time period, a gist of the alleged accusation, and broad categories of recipients. It does not identify any particular recipient or otherwise provide facts from which the recipients can be ascertained. Nor does the pleading identify an occasion or context from which the Court can reasonably infer an actionable publication outside the litigation process. The remaining allegations largely recite the elements and damages.

Count III therefore does not cross the line from possible to plausible. It is dismissed without prejudice. Any amended claim must, to the extent reasonably available, identify the speaker or responsible agent, the substance of each alleged publication, an approximate date or occasion, and the recipient or ascertainable class of recipients.

### D.    Count IV — Tortious Interference with Prospective Business Relations

As for Person's tortious interference with prospective business relations claim, ACS argues that Person identifies no particular prospective relationship or opportunity and alleges ACS's purported interference only in general terms. (DE 6-1 at 16.) A claim for intentional interference with prospective contractual relations requires intentional interference with a prospective contractual relationship, for an improper purpose or by improper methods, resulting in injury. *Crandall Corp. v. Navistar International Transportation Corp.*, 395 S.E.2d 179, 180 (S.C. 1990). The claimant must allege facts showing a truly prospective contract or business relationship and a reasonable expectation of economic benefit, not merely a generalized hope of future business. *United Educational Distributors, LLC v. Educational Testing Service,* 564 S.E.2d 324, 328 (S.C. Ct. App. 2002).

Person alleges only unidentified "ongoing relationships and prospective business opportunities in the software and consulting industry." (DE 4 at 20, Countercl. ¶ 36.) He names no customer, prospective employer, investor, negotiation, expected contract, or reasonably anticipated benefit. Nor does he connect any particular threat, cease-and-desist communication, or defamatory publication to the

loss of a particular opportunity. The allegation of financial loss is therefore conclusory.

Count IV is dismissed without prejudice. Any amendment must identify a specific prospective relationship or opportunity, the alleged interference directed to it, the improper purpose or method, and resulting injury.

### E.     Count V — Abuse of Process

ACS also moves to dismiss Person's abuse of process counterclaim. (DE 6-1 at 17.) ACS contends Person failed to plead the necessary elements of the cause of action, specifically the improper act element, in order to state a claim for which relief could be granted. (*Id.*)

Abuse of process has two elements: (1) an ulterior purpose and (2) a willful act in the use of process that is not proper in the regular conduct of the proceeding. *Pallares v. Seinar*, 756 S.E.2d 128, 133–34 (S.C. 2014). The second element requires a willful or overt act in the use of process that is unauthorized or aimed at an illegitimate collateral objective. *Id*. The tort does not arise merely because a party initiates or pursues litigation with an improper motive. The claimant must allege a willful use of process for an objective not legitimate in the regular conduct of the proceeding. *See Food Lion, Inc. v. United Food & Commercial Workers International Union*, 567 S.E.2d 251, 253–54 (S.C. Ct. App. 2002). Count V identifies no use of process distinct from filing and maintaining the action in the ordinary course.

Person alleges ACS filed this action to harass him, chill competition, and punish him for refusing to abandon his venture. (DE 4 at 20, Countercl. ¶¶ 40–43.)

9

Those allegations adequately plead an ulterior motive. But Count V identifies no separate misuse of a summons, subpoena, discovery device, injunction procedure, attachment, or other process. The pleaded "misuse" is the filing and maintenance of the lawsuit itself. Even accepting the alleged retaliatory purpose as true, that is insufficient under *Pallares* and *Food Lion*.

Count V is dismissed without prejudice. Leave to amend is limited to a claim based on an actual willful misuse or perversion of process; allegations of an improper motive for filing suit, standing alone, will not suffice.

## F.    Count VII — Intentional Infliction of Emotional Distress

ACS moves to dismiss Person's counterclaim for intentional infliction of emotional distress, also known as outrage, as barred by the South Carolina Workers' Compensation Act. (DE 6-1 at 10–12.) Person concedes that his alleged work-related emotional injury falls within the South Carolina Workers' Compensation Act. (DE 8 at 8.) The Act generally provides the exclusive remedy against an employer for covered personal injury arising out of and in the course of employment. S.C. Code Ann. § 42-1-540; *Dickert v. Metropolitan Life Insurance Co.*, 428 S.E.2d 700, 701 (S.C. 1993). Person does not plead facts supporting an applicable exception.

The claim also fails independently under the substantive law of outrage. A claimant must plead:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused plaintiff's emotional distress; and

10

(4) the emotional distress suffered by the plaintiff was severe such that no reasonable man could be expected to endure it.

*Hansson v. Scalise Builders of South Carolina*, 650 S.E.2d 68, 70 (S.C. 2007) (internal quotations omitted). Allegations that ACS reversed its position, terminated Person, and filed suit—even if unfair or retaliatory—do not meet that demanding standard. The allegations of "severe emotional, physical and mental harm" and medical bills are largely conclusory.

Count VII is dismissed with prejudice as a common-law tort claim. The Court expresses no view on the merits or timeliness of any claim Person may pursue before the South Carolina Workers' Compensation Commission.

### G.    Count VIII — Promissory Estoppel

ACS argues that Count VIII fails because the asserted promise concerns continued at-will employment and because Person does not adequately allege a definite promise. (DE 6-1 at 8–9; DE 12 at 5–6.) Promissory estoppel requires an unambiguous promise, reasonable reliance, reliance that was expected and foreseeable, and injury caused by the reliance. *North American Rescue Products, Inc. v. Richardson*, 769 S.E.2d 237, 241–42 (S.C. 2015). The doctrine is a quasi-contract remedy used when refusing enforcement would sanction fraud or cause other injustice. *Id.*

The promise pleaded here is that ACS "would not terminate Defendant for pursuing his venture." (DE 4 at 21–22, Countercl. ¶¶ 50–54.) That is not a promise collateral to the employment relationship; it is a promise restricting ACS's right to terminate an at-will employee. *Hall* identifies the right to terminate for any reason

11

as an integral term of the at-will contract. 866 S.E.2d at 342–43. Allowing promissory estoppel to enforce the pleaded no-termination promise would circumvent that rule.

The federal cases collected by the parties point in the same direction. *Gentry v. Bioverativ U.S. LLC* held that promissory estoppel generally does not apply to promises tied to continued at-will employment because the employment relationship already rests on consideration and a promise of continued employment is illusory. No. 2:19-cv-00873-MBS, 2019 WL 3802476, at *7–8 (D.S.C. Aug. 13, 2019) (citing *Glover v. Lockheed Corp.*, 772 F. Supp. 898, 907 (D.S.C. 1991)). *Gentry* involved employment benefits, while Person seeks venture-investment losses. But the relevant distinction concerns the promise, not simply the category of damages. Person seeks to enforce a promise of continued employment while he pursued the venture.

Count VIII is also deficient because it does not identify who made the promise, when and where it was made, its precise terms, or facts showing authority to bind ACS. That said, Count VIII is dismissed without prejudice only to the pleading of a sufficiently definite promise that is genuinely collateral to continued at-will employment—for example, a specific promise to invest, reimburse defined expenses, or enter a partnership on stated terms independent of Person's continued employment. Person may not replead the same no-termination promise under a different label.

## IV.    LEAVE TO AMEND

Ordinarily, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The scheduling-order deadline for amendments has expired. (DE

12

13.) In the interest of resolving the pleading issues efficiently and because this is the Court's first ruling on the counterclaims, the Court modifies the schedule for the limited purpose stated below. Good cause exists for this limited modification because this is the Court's first ruling testing the sufficiency of the counterclaims, the deficiencies identified in Counts I, III, IV, V, and VIII may be curable, and the limited amendment authorized here will not materially disrupt the remaining schedule. *See* Fed. R. Civ. P. 16(b)(4). Any amended counterclaims must be filed as a complete pleading and may not incorporate the superseded counterclaims by reference. No separate Rule 16 motion is required for an amendment that complies with this Order.

Person may file one amended counterclaim pleading within fourteen (14) days of entry of this Order as to Counts I, III, IV, V, and VIII, subject to the limitations described above. Counts II and VII may not be repleaded as separate causes of action. If Person does not timely amend, the dismissals without prejudice will terminate those counterclaims in this action. ACS shall respond within the time allowed by the Federal Rules.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss (DE 6) is GRANTED.

1. Count I, wrongful termination/breach of employment agreement, is DISMISSED WITHOUT PREJUDICE and with limited leave to amend;

2. Count II, breach of the implied covenant of good faith and fair dealing, is DISMISSED WITH PREJUDICE as a separate cause of action;

3. Count III, defamation, is DISMISSED WITHOUT PREJUDICE and with limited leave to amend;

13

4. Count IV, tortious interference with prospective business relations, is DISMISSED WITHOUT PREJUDICE and with limited leave to amend;

5. Count V, abuse of process, is DISMISSED WITHOUT PREJUDICE and with limited leave to amend;

6. Count VII, intentional infliction of emotional distress, is DISMISSED WITH PREJUDICE as a common-law tort claim, without prejudice to any administrative remedy available under the South Carolina Workers' Compensation Act; and

7. Count VIII, promissory estoppel, is DISMISSED WITHOUT PREJUDICE and with limited leave to amend solely to plead a sufficiently definite promise genuinely collateral to continued at-will employment.

Any amended counterclaim pleading shall be filed within fourteen (14) days of entry of this Order.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
July 27, 2026

14